| | | |
|---|---|---|
| BLACKBRIAR CAPITAL MANAGEMENT, LLC, individually and by and for the benefit of the BLACKBRIAR ENERGEX PRODUCTION TRUST I, as its Trustee and Collateral Agent, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| VS. | ) ) | Case No.: |
| ENERGEX SERVICES, INC., THOMAS SENENFELDER, PATRICK MARTIN, DOUG LESHER, MELINDA ANDERSON, ENERGEX PIPELINE CORPORATION, TMD ENERGY, INC., SUSAN CARRICHNER, 1XENERGY, INC., KENNETH DAVIN | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

The Plaintiffs, BlackBriar Capital Management, LLC, individually and by and for the benefit of the BlackBriar Energex Production Trust I, as its Trustee and Collateral Agent (collectively, "BlackBriar"), by undersigned counsel, files this Complaint against Defendants, Energex Services, Inc., Thomas Senenfelder, Patrick Martin, Douglas W. Lesher, Melinda Anderson, Energex Pipeline Corporation, TMD Energy, Inc., Susan Carrichner, 1xEnergy, Inc. and Kenneth Davin.

BlackBriar is informed and believes:

## SUMMARY OF THIS ACTION

1.      This is an action to recover fraudulently-induced passive investments made -- and squandered -- in an elaborate scam, ostensibly to re-activate an oil and natural gas-gathering and production pipeline operation in East Tennessee.  But it turns out the main promoter didn't own what he said, and his controlled entities didn't do what they were supposed to do;  instead, his cronies (in active concert and participation with him) merely

embezzled the investments purportedly dedicated to well-servicing and E&P activities, to the detriment of the Trustee that had trusted them. The Defendants promised an oil and gas-gathering-and-processing venture, but Energex turned out to be a fraudulent "cash-gathering-and-dissipation" venture instead.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1332(a)(1), because Plaintiff BlackBriar is a Delaware LLC having its principal place of business in New York and its members are citizens of New York. All Defendants, both corporations and natural persons, are citizens of Tennessee. The matter in controversy exceeds $75,000.00, exclusive of interest and costs.

## THE PARTIES

### PLAINTIFFS BLACKBRIAR.

3. Plaintiff BlackBriar Capital Management, LLC ("BlackBriar") is a Delaware limited liability company, having its principal place of business in Miller Place, New York. Christopher La Lima and Stephen Brown, both citizens of New York, are the Members of BlackBriar. BlackBriar is the trustee and collateral agent for BlackBriar Energex Production Trust I.

4. Plaintiff, the BlackBriar Energex Production Trust I (together with its Trustee, collectively "BlackBriar") is a Volumetric Production Investment Agreement Trust, under which BlackBriar is its sole Trustee, authorized to initiate and conduct judicial proceedings in its name and on its behalf. No beneficiaries of the Trust are citizens of Tennessee.

### THE DEFENDANT CO-CONSPIRATORS.

#### THE MAIN PROMOTER: SENENFELDER.

5. Plaintiffs are informed and believe that Defendant Thomas M. Senenfelder is a Tennessee citizen having his principal address at 4505 Linton Rose Lane, Knoxville, TN

37918-8168. Senenfelder is (or was) an Officer of Energex Services and an Officer or Director of Energex Pipeline and 1xEnergy (named below) as well. Senenfelder had authority to bind the Entity Defendants. Senenfelder was the main promoter of the venture and was responsible for many misrepresentations. He directed the endeavor and controlled (or was in a position to control) the other individual-defendant co-conspirators.

### THE ENERGEX ENTITY DEFENDANTS: HIS VEHICLES.

6. Defendant Energex Services, Inc. ("Energex Services") is a Tennessee corporation having its principal place of business in Knoxville, Tennessee. Energex Services may be served through its agent for service of process at Suite 1102, 9724 Kingston Pike, Knoxville, TN 37922-6906. Energex Services is the principal entity for Senenfelder's venture and functioned as the actual or *de facto* holding company for other Entity Defendants who were affiliated by common ownership or control; also provided exploration and production ("E&P") services to the venture.

7. Defendant Energex Pipeline Corporation ("Energex Pipeline") is a Tennessee corporation having its principal place of business in Dayton, Tennessee; it functioned as the venture's pipeline ownership company. Energex Pipeline may be served through its agent for service of process, J. Arnold Fitzgerald, 363 4th Avenue, Dayton, TN 37321-1223. Senenfelder is an Officer of Energex Pipeline.

8. Defendant, TMD Energy, Inc. ("TMD Energy") is a Tennessee corporation having its principal place of business in Knoxville, Tennessee. TMD Energy maintains an office located at 2230 Rugby Highway, Robbins, Tennessee 37852-3715. TMD Energy may be served through its agent for service of process, Kenneth R. Davin, 501 Clinch Ave., Knoxville, TN 37902-2135. TMD Energy came under Senenfelder's control after a stock-swap made it effectively a subsidiary of Energex Services, after which TMD Energy provided the E&P operating services for the venture.

9. Defendant 1xEnergy, Inc. ("1xEnergy") is a Tennessee corporation having its principal place of business in Knoxville, Tennessee. 1xEnergy may be served through its agent for service of process at 201 Randolph St., Knoxville, TN 37917-7646. Senenfelder and Carrichner are (or were) Officers, Board Members or Shareholders of 1xEnergy. 1xEnergy bought almost all of Energex Services in a sham transaction as Senenfelder's "escape hatch" from his wrongdoing in control of the Energex venture.

### THE INDIVIDUAL CO-CONSPIRATORS.

10. Defendant Patrick Lansing Martin is a Tennessee citizen having his principal address at 100 Confederacy Circle, Knoxville, TN 37934-3900. Martin is (or was) an Officer and/or Board Member of Energex Services. Martin received unauthorized payments from Energex Services that were designated as VPI investments for production.

11. Defendant Douglas Warner Lesher is a Tennessee citizen having his principal address at 1212 Westland Bay Drive, Knoxville, TN 37922-5132. Lesher is (or was) an Officer and/or Board Member of Energex Services. Lesher received unauthorized payments from Energex Services that were designated as VPI investments for production.

12. Defendant Melinda Anderson is a Tennessee citizen having her principal address at 1004 Middleton Place, Knoxville, TN 37923-6345. Anderson is (or was) an Officer and/or Board Member of Energex Services. Anderson received unauthorized payments from Energex Services that were designated as VPI investments for production.

13. Defendant Susan Elizabeth Carrichner is a Tennessee citizen having her principal address at 4505 Linton Rose Lane, Knoxville, TN 37918-8168. Carrichner is an Officer and/or employee or agent of Energex Services and is (or was) an Officer, Board Member or Shareholder of 1xEnergy. Carrichner temporized and helped to lull BlackBriar, while at the same time abetting the 1xEnergy "escape" sham transaction.

14.     Defendant Kenneth Ray Davin is a Tennessee citizen having his principal address at 8217 Sharp Road, Knoxville, TN 37849.  Davin is (or was) an Officer, Board Member and/or Shareholder of Defendant 1xEnergy.

## THE ENERGEX PIPELINE SCAM

### SENENFELDER'S PITCH.

15.     In 2014, a principal of BlackBriar met Defendant Senenfelder, who represented he was in the oil and gas business and had acquired the largest pipeline/gas transportation system in Tennessee, "The Fentress Pipeline."  Throughout that year, Defendant Senenfelder worked out of BlackBriar's offices and requested BlackBriar's financial assistance to facilitate Senenfelder's reactivation of operations of "his" pipeline and "his" 120 gas wells tied into that Pipeline.

16.     Around February 12, 2015, Defendant Senenfelder provided BlackBriar with a document describing "Energex, LLC" and its team of experts/employees/officers including, Senenfelder as its Head of Development and Defendant Lesher as its Director of Operations, with David R. Smythe as Director of Engineering, William P. Clarke as Director of Marketing, Howard Fuller as Chief Financial Officer, and Raymond W. Holland, Esq. as Legal Counsel/Vice President.

### THE VPP FINANCING VEHICLE.

17.     Senenfelder represented to BlackBriar that he (with counsel) had a tax-advantaged way for investors to finance the pipeline operations through "Volumetric Production Investment (VPI)."  Around February 18, 2015, Senenfelder provided BlackBriar a document describing the "Volumetric Production Investments" touted by Senenfelder.

18.     Volumetric Production Investment is a structured debt-financing program in which investors advance funds to a seller, here Energex Services, in exchange for a non-operating fractional, undivided property interest in a specific portion of oil or gas and other

hydrocarbon (here, mainly oil) production (over each defined period) to secure agreed royalty payments over a specified period of time. The exploration and production ("E&P") operator (here Energex Services) sells the production on behalf of the investors, which then receive payment directly from the production's buyer (say, a refinery).

19.     In Senenfelder's model, the invested funds were pooled in the BlackBriar Energex Production Trust I, together with the mineral interests granted by the Energex oil and gas companies (as Grantors and Obligors under the Trust).[1] The Production Trust, in turn, is managed by a Collateral Agent (here, BlackBriar Capital Management), which administers each investor's "Energy Production Investment Agreement" and issues to the E&P operator (here Energex Services) an instruction memo (the "Energy Production Investment Obligation," or EPIO invoice) directing the payment of royalties for the aggregate "Energy Production Investment Agreement Obligations" from each period's production.[2] The Collateral Agent then distributes those Volumetric Production Payments ("VPP") back to the investors.

20.     Senenfelder induced BlackBriar to serve as Collateral Agent and Trustee of a specialized investment vehicle, a VPI Production Trust, called the BlackBriar Energex Production Trust I.

21.     Throughout 2015, BlackBriar agreed to assist Senenfelder and his companies to establish financing to restart operations for Defendant Energex Pipeline.

---

[1] "Companies" because the various Energex entities played different roles as owner, exploration and production ("E&P") operator and so forth.

[2] Somewhat similar to the commonly-understood purchase-order memo under a UCC installment contract with collateral security.

**SENENFELDER'S AND ENERGEX'S FALSE INDUCEMENTS.**

22.     Around June 2016, Senenfelder provided BlackBriar a financial package including financial projections, due-diligence documents consisting of titles, lease agreements, ownership deeds, and all "Volumetric Production Investment" documents.

23.     Around July 2016, Defendant Senenfelder told BlackBriar that Senenfelder had an agreement with Katherine Cone Keck (the previous owner of Superior Oil, which had been purchased by Mobil Oil in 1984) obligating Ms. Keck to provide over 5,000 oil and gas well leases, certain gathering systems and pipelines on over 750,000 acres to be held by Senenfelder's newly- formed corporation, Defendant Energex Services.  Senenfelder said that, in return, Ms. Keck would receive royalties and an equity stake in Energex Services.

**STEPS TO RAMP UP PRODUCTION.**

24.     Between July and September 2016, Senenfelder and BlackBriar worked together to obtain financing for the new pipeline operations.  Senenfelder signed a Letter of Intent with United Capital Partners, LLC (a company that specializes in asset-based equipment lending and working-capital solutions) for the financing of a proposed Compressor and Stripping Plant.  In connection with that effort, BlackBriar wired United Capital Partners $15,000.00 to be put towards due-diligence, with the agreement that Senenfelder and Energex Services would reimburse BlackBriar's contribution to the venture.

25.     Around October 4, 2016, BlackBriar and Senenfelder entered written agreements for Volumetric Production Investment consisting of a Collateral Trust Agreement, a Collateral Assignment of Lease Agreement, a Production Share Conveyance Agreement, an Assignment of Royalty Interest (all three from Energex, as Grantor, to the Trust), a VPI Sale and Purchase Agreement, and Compensation Agreements.

26.     Throughout October 2016, Senenfelder negotiated the purchase of an existing oil and gas production company, Defendant TMD, which then was owned and operated by

Charles Murchison. Around October 19, 2016, Senenfelder provided BlackBriar with a fully-executed "Share Exchange Agreement" between Energex Services and TMD, which included an Indemnification and Hold-Harmless Agreement under which TMD and Murchison acknowledged responsibility for prior liabilities of approximately $60,000.00.

27.     Around November 14, 2016, Senenfelder gave BlackBriar a "total business indebtedness schedule" for Energex Services and its affiliates; that schedule identified Senenfelder as the Chief Operating Officer of Energex Services.

28.     Around December 1, 2016, Senenfelder and BlackBriar formed the "BlackBriar Energex Production Trust I" as a form of Grantor Trust, with Energex Services as the Grantor. Senenfelder signed the Trust, listing himself as Chief Operating Officer and majority stakeholder owning 900 of 1,000 outstanding shares of Energex Services, and listing the full Board of Directors and officers of the company.

29.     Around December 13, 2016, Senenfelder provided BlackBriar an updated "Summary of the Appraisal and Liquidation Value" of Energex Pipeline -- which then was part of Energex Services and a collateralized asset of the BlackBriar Energex Production Trust I. Senenfelder, Energex Services and Energex Pipeline represented to BlackBriar that the certified valuation of the pipeline was $442,203,424.00.

30.     Between December 2016 and February 2017, BlackBriar deposited $550,000.00 of proceeds from various Energy Production Investment Agreements into the BlackBriar Energex Production Trust I investment account.

BUDGET AND PAYMENT BUILD TRUST.

31.     Around January 2017, Senenfelder presented BlackBriar with the first finalized budget for a "Well Treatment Program." Relying on that budget and Defendants' previous representations, BlackBriar caused the BlackBriar Energex Production Trust I to wire Energex Services $75,000.00 to fund the first budget for the "Well Treatment Program."

32.     Around January 11, 2017, Energex Services wired $20,597.41 to the Trust Account, representing the royalty/return of capital payment for December due under the VPI.

33.     Also in January 2017, Senenfelder and BlackBriar met with a new financing source -- Powerdyne International in New York City – where Senenfelder signed a contract for funding and operation of a new compressor and stripping plant.

34.     Following several funding conferences with Powerdyne, Powerdyne notified Senenfelder that $120,000.00 was needed to fund an escrow to secure financing for a compressor station.  These funds were unaccounted for in the original VPI production budgets and additional monies were raised to be placed in escrow of the Trust as authorized by Senenfelder and Energex Services.

35.     $50,000.00 was raised for the VPI in February 2017 and BlackBriar submitted EPIO invoices clearly outlining all monies raised, royalties and return of capital due in February from the January production.   Senenfelder and Energex Services confirmed the accuracy of the calculations.   Senenfelder and Energex Services assured BlackBriar that production would be at least 20 barrels per day (BPD).  But when production figures did not match the amount of oil picked up from the field, Senenfelder and Energex Services claimed that many roads were inaccessible due to weather.  Those invoices finally were paid.

**WORRIES AND REASSURANCES.**

36.     In February 2017, Senenfelder presented BlackBriar a revised budget for well treatment.  The new budget was required because the initial funded amounts had been misappropriated by Energex Services employees and diverted from well treatment. Senenfelder denied having been aware of it at the time and vowed he had made changes to ensure it would not happen again from his team of employees.

37.     In March 2017, BlackBriar discovered that Senenfelder and Energex Services did not own or have any interest in the Fentress pipeline, its related gas wells or even the land

where the compressor station was to be built – contrary to the previous representations of Senenfelder, Energex Services, and Energex Pipeline. Additionally, BlackBriar is informed and now believes that some of the documents previously provided by Senenfelder contained forged signatures.

38. Attempting to salvage its earlier investments, BlackBriar identified an alternative site containing a smaller pipeline owned by Defendant TMD, which could transport gas from the field to the new proposed compressor site. But thereafter, Senenfelder and Energex Services failed to follow through.

39. BlackBriar requested Energex Services' financials, but were provided only a bank statement, without supporting documents. BlackBriar demanded supporting documents from Martin and Anderson (identified as handling the books Energex Services); but Martin and Anderson admitted there were no supporting documents. Senenfelder and Energex Services assured BlackBriar all was well and the bookkeeping would be brought up to date once his team completed the integration of TMD into Energex Services.

40. In April 2017, a deposit of $5,700.00 was placed on the new property and Senenfelder asked the Trust to raise additional capital for the full purchase of the property -- which Senenfelder represented was crucial to the venture's success.

41. Around April 7, 2017, BlackBriar sent $5,000 to Senenfelder and Energex Services to pay for oil trucks. Senenfelder represented that the one of the trucks was almost road ready and would be placed in service the following week. This did not occur.

42. In the well-treatment updates Senenfelder provided BlackBriar, Senenfelder represented that Energex Services would achieve 1,000 barrels of production for the month -- more production than needed to meet VPI obligations (and later said it has as much in reserves).

43. BlackBriar submitted an EPIO invoice clearly detailing the money raised, royalties and return of capital due in April from Energex Services' March production. Energex

Services made a partial payment and the balance finally was received from the refinery – but only after creating a deficit position in the Trust.

**SKIMMING VPI INVESTMENTS FOR UNAUTHORIZED PERSONAL PAYMENTS.**

44.     BlackBriar again demanded financials from Senenfelder and Energex Services. An audit of the documents received revealed that unauthorized payments amounting to approximately $54,000.00 that were taken by Defendants Martin, Lesher and Anderson from VPI investments earmarked for production. As he had before, Senenfelder (mis)represented he did not know of the unauthorized payments and represented that the monies would be put back by future production. He further assured BlackBriar that no payments or salaries would be paid to shareholders, directors or officers until all royalties were current and Energex Services was profitable.

45.     Additional VPI capital of $60,000.00 was raised for the deposit on the gas plant and new property purchase. Additionally, money was sent to cover the payroll for Defendant TMD, as well as well treatments. The additional capital infusions were required as a result of the unauthorized payments taken by Martin, Lesher and Anderson.

46.     BlackBriar received communications from Murchison about production issues, old equipment, poor road conditions, lack of an oil truck and lack of funds, which, in turn, highlighted the material misrepresentations and fraudulent statements by Senenfelder and Energex Services.

47.     In June 2017, additional VPI capital of $300,000.00 was raised to complete the finance deposit for the processing plant, purchase the subject property and for the budget for well treatment program.

48.     That same month, BlackBriar wired $71,000.00 to Energex Services to close on the purchase of the new processing-plant property. Of that, $10,000.00 was to be paid to Branch Energy to relocate its gas pipeline. But, BlackBriar later was informed and believes

that money never reached Branch Energy, and instead was diverted additional unauthorized payments to Martin, Lesher and Anderson.

49. Again, that same month, Defendant Senenfelder represented that the oil truck was ready and that the truck would be in the field in a week after he dealt with motor vehicle transportation tags and registration.

50. BlackBriar submitted an EPIO invoice clearly outlining all money raised, royalties and return of capital due in May from the April production. The resulting payment was sent directly from the refinery, but was short and created an extremely large deficit balance in the Trust. Senenfelder expressed surprised and promised to investigate the shortfall.

51. In July 2017, Energex Services' oil production statements did not reconcile with the tickets showing how much oil was picked up from the field. Senenfelder and Energex Services told BlackBriar they had learned from Murchison that oil was missing and that it was likely being taken without permission during the weekend shifts when the crew was light.

52. When BlackBriar finally received the Energex check register, it revealed that Martin, Lesher and Anderson were continuing to take unauthorized payments amounting to fifty percent of the production funding budget. BlackBriar demanded that Senenfelder and Energex Services terminate their business relationship with Martin, Lesher and Anderson.

**BLACKBRIAR'S CURE NOTICES AND DEFENDANTS' LULLING.**

53. On July 31, 2017, BlackBriar served a Right to Cure letter on Senenfelder and Energex Services; BlackBriar received no reply. BlackBriar served a second Right to Cure letter on Senenfelder and Energex Services on September 7, 2017 demanding resolution of the prior operational issues and to address their apparent cessation of oil and gas operations.

54. At a meeting in the following weeks, Senenfelder and Energex Services lulled BlackBriar by presenting two options: Renegotiate the existing agreements or entertain a "buy-

out" offer from Energex Services and Senenfelder that would make BlackBriar and Trust whole. BlackBriar agreed to entertain the promised buy-out.

55. In the meantime, Senenfelder and Energex Services directed BlackBriar to work with Defendant Carrichner, who allegedly was completing an audit of Energex Services. So, in good faith, BlackBriar provided the requested documentation to Carrichner.

56. Expecting to receive the promised buyout offer, BlackBriar sought confirmation of Carrichner's management authority (for Energex Services), as well as copies of the audit, a title rundown of the Premises referenced in the VPI agreements, as well documents evidencing any changes to all assets that are/were part of the Trust. Despite repeated inquiries from BlackBriar and its prior counsel, none of the Defendants provided that information. Instead, Defendants went to ground.

**S**ENENFELDER'S **S**HAM "E**SCAPE** H**ATCH**" T**RANSACTION**.

57. Instead of working to fulfill their obligations as they had promised, Defendants conspired and/or colluded together to deprive the BlackBriar (and the Trust) of contractual rights and to evade their responsibilities. For example, Senenfelder purported to convey his 91% interest in Energex Services (and its affiliates and assets) to newly-formed Defendant 1xEnergy, Inc. in a sham transaction for just $28 and an interest in a Davin-owned company, Net Zero Design-Build, Inc. On information and belief, Senenfelder conspired with Carrichner and Davin in connection with that transaction.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

58. BlackBriar incorporates by reference the allegations in paragraphs 1 – 58 above.

59. Senenfelder and Energex Services (together with their agents, servants, and/or employees and others in active concert and participation with them) breached their contractual agreements with, and obligations to, BlackBriar.

60. Defendants' breach of contract(s) injured BlackBriar in amount(s) to be proven at trial.

## SECOND CAUSE OF ACTION:  FRAUD AND MISREPRESENTATION

61. BlackBriar incorporates by reference the allegations in paragraphs 1 – 58 above.

62. Senenfelder and Energex Services (together with their agents, servants, and/or employees and others in active concert and participation with them) acted in bad-faith, with willful fraud, misrepresentation and dishonest behavior and have damaged and defrauded BlackBriar.  In particular, Defendants, Senenfelder and Energex Services falsely claimed an ownership interest in the Fentress Pipeline, provided false and misleading documents as to the company's assets, falsely represented that personal funds were used to secure interest in companies and/or land, purposely misled and/or lied to BlackBriar regarding the status of investments, and misappropriated funds dedicated to the venture.

63. Senenfelder and Energex Services (together with their agents, servants, and/or employees and others in active concert and participation with them) made false representations and omissions described above, and carried out the scheme as described above, with the intent to deceive BlackBriar.

64. BlackBriar justifiably relied upon the misrepresentations and omissions of Senenfelder and Energex Services (together with their agents, servants, and/or employees and others in active concert and participation with them).

65. As a result of the misrepresentations and omissions of Senenfelder and Energex Services (together with their agents, servants, and/or employees and others in active concert and participation with them), BlackBriar has sustained monetary damages.

66. BlackBriar is entitled to judgment against Senenfelder and Energex Services (together with their agents, servants, and/or employees and others in active concert and participation with them) in an amount to proven at trial.

## THIRD CAUSE OF ACTION:  UNJUST ENRICHMENT

67.     BlackBriar incorporates by reference the allegations in paragraphs 1 – 58 above.

68.     Senenfelder and Energex Services (together with their agents, servants, and/or employees and others in active concert and participation with them) received thousands of dollars from BlackBriar that they should not have received and which they cannot in good conscience be allowed to retain.

69.     Senenfelder and Energex Services (together with their agents, servants, and/or employees and others in active concert and participation with them) have been unjustly enriched.

70.     Martin, Lesher and Anderson each received unauthorized payments from Energex, which they were not entitled to receive and were diverted from production funds. They each have been unjustly enriched.

71.     Davin and Carrichner received Energex interests in the 1xEnergy sham transaction and thereby were unjustly enriched.

72.     BlackBriar is entitled to the return of all amounts by which Defendants have been unjustly enriched and to a constructive trust over their assets in a like amount, pending restitution.

## FOURTH CAUSE OF ACTION:  THEFT / MISAPPROPRIATION

73.     BlackBriar incorporates by reference the allegations in paragraphs 1 – 58 above.

74.     Senenfelder and Energex Services (together with their agents, servants, and/or employees and others in active concert and participation with them – specifically including without limitation Martin, Lesher and Anderson) misappropriated funds that were to be invested in accordance with the agreement and/or arrangement with BlackBriar.

75.     That as a result of the misappropriation of funds as described above, Senenfelder and Energex Services (together with their agents, servants, and/or employees and others in

active concert and participation with them) breached their fiduciary duties to BlackBriar and others.

76.    BlackBriar is entitled to judgment against Senenfelder and Energex Services (together with their agents, servants, and/or employees and others in active concert and participation with them) in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION:  BREACH OF FIDUCIARY DUTY

77.    BlackBriar incorporates by reference the allegations in paragraphs 1 – 58 above.

78.    As author and Grantor to the BlackBriar Energex Production Trust, Energex established the Trust as a mechanism for obtaining production capital and obligated itself to repay that production capital according to the terms of Trust and its accompanying agreements. Energex thereby assumed fiduciary obligations to the Trust.

79.    By its wrongful conduct as set forth above, Energex breached its fiduciary duties to the Trust.

80.    By their wrongful conduct as set forth above, Senenfelder and the other individual Defendants (in active concert and participation together) caused Energex to breach its fiduciary duties to the Trust.

81.    By breaching Energex's fiduciary duties to the Trust, the Defendants have injured the Trust and harmed its ability to repay the Trust beneficiaries.

82.    Plaintiffs are entitled to damages for that harm in amounts to be proven at trial.

### SIXTH CAUSE OF ACTION:  CIVIL CONSPIRACY

83.    BlackBriar incorporates by reference the allegations in paragraphs 1 – 58 above.

84.    Senenfelder and the individual Defendants had a common design and understanding to accomplish the scheme set forth above through their concerted actions together, to accomplish the unlawful purpose of acquiring the VPI funds without delivering the promised production.

85.     Each Defendant knowingly understood and committed overt act(s) in furtherance of the scheme and/or its constituent parts (in a hub-and-spoke fashion with Senenfelder) – even if each Defendant did not comprehend each aspect of the whole.

86.     In the alternative, any Defendant who did not agree to the overall scheme nevertheless was aware of at least one of its illicit constituent parts and agreed to assist in it, thereby aiding-and-abetting the conspiracy.

87.     The scheme and conspiracy to achieve it injured BlackBriar in amount(s) to be proven at trial.

### SEVENTH CAUSE OF ACTION:  1xENERGY'S SUCCESSOR LIABILITY, ALTERNATIVELY THEFT OR UNJUST ENRICHMENT

88.     BlackBriar incorporates by reference the allegations in paragraphs 1 – 58 above.

89.     Upon information and belief, Defendants Senenfelder, Carrichner and Davin are officers, directors and/or shareholders in Defendant 1xEnergy.

90.     Upon information and belief, 1xEnergy was formed to purchase and/or control the assets of Energex Services and TMD.  In the share purchase agreement by which Senenfelder conveyed his 91% interest in Energex Services to 1xEnergy, 1xEnergy acknowledged and assumed Energex Services' obligations to repay "the monies due back to the investors" under the BlackBriar Energex Production Trust.

91.     Alternatively, to the extent 1xEnergy took ownership of Energex Services (and its assets), but disavows or attempts to evade its liabilities (including those to Trust), it has participated in the theft of those assets and/or been unjustly enriched to that extent.

92.     Alternatively, to that extent, Defendants, Energex Services, Senenfelder, Energex Pipeline Corp., TMD, Carrichner, Davin and 1xEnergy have colluded to deprive Plaintiff of its rights pursuant to the VPI agreement.

93.     By reason of the foregoing, Plaintiffs are entitled to judgment against the Defendants, in amounts to be proven at trial.

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. This 2nd day of April, 2019 at Miller Place, New York.

BlackBriar Capital Management, LLC
(and as Trustee of the BlackBriar
Energex Production Trust I).

BY: _Christopher La Lima_

Christopher La Lima

ITS: Member

## PRAYER

WHEREFORE, Plaintiffs, BlackBriar Capital Management, LLC, individually and by and for the benefit of the BlackBriar Energex Production Trust I, as its Trustee and Collateral Agent, pray that, after due proceedings had, the Court enter judgment in its favor and against Defendants for such damages as proven at trial (and other amounts including attorneys' fees and costs, as applicable), together with such other further relief as equitable and just under the circumstances.

April 2, 2019

/s/ Thomas K. Potter, III
Thomas K. Potter, III (TN BPR 024857)
Alexandria Rhoades (TN BPR 037024)
Burr & Forman LLP
222 Second Avenue South, Suite 2000
Nashville, TN 37201
Telephone: (615) 724-3231
Facsimile: (615) 724-3331
Email: tpotter@burr.com

*Counsel for Plaintiffs, BlackBriar Capital Management, LLC, individually and by and for the benefit of the BlackBriar Energex Production Trust I, as its Trustee and Collateral Agent*